IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| TREVION JACKSON, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| vs. | ) | |
| | ) | HON. |
| THE DOW CHEMICAL COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

## **COMPLAINT**

PLAINTIFF, TREVION JACKSON, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against THE DOW CHEMICAL COMPANY.

## **JURY DEMAND**

COMES NOW PLAINTFF, and hereby makes his demand for trial by jury.

## **JURISDICTION**

1.     At all times relevant to this complaint, PLAINTIFF TREVION JACKSON was a resident of Saginaw, County in the State of Michigan.

2.     DEFENDANT THE DOW CHEMICAL COMPANY is a domestic profit corporation, which has a place of business in Midland, Michigan.

3.     This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. § 1981.

4.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5.    Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

6.    Plaintiff, Trevion Jackson, is a Black male who was employed by Defendant, The Dow Chemical Company, from April 2022 until his wrongful termination in February 2023.

7.    Plaintiff was hired into Dow's 501 building, where he worked with a white male employee named Ben.

8.    When Plaintiff and Ben were introduced as new hires to their supervisor, Joe Bushre, Bushre only acknowledged Ben and ignored Plaintiff. This was the first indication of racial discrimination that Plaintiff would experience throughout his employment.

9.    From the beginning, Bushre regularly scrutinized Plaintiff's work more closely than that of white employees, including Ben, and continually tried to find faults in Plaintiff's performance.

10.    Despite being qualified for promotions, Plaintiff was passed over in favor of less experienced and less qualified white employees. Bushre would often promote white employees, even those with documented poor performance, while denying Plaintiff equal opportunities.

11.    Plaintiff was intermittently absent from work to care for his grandmother, but he had sufficient paid leave and vacation time to cover these absences. However, Bushre continuously harassed Plaintiff with phone calls and text messages, questioning him about his time off and whereabouts.

12.    In mid-2022, Plaintiff informed his supervisor, Mike Harding, that he believed Bushre's behavior was racially motivated and that Bushre was trying to get him fired. Despite Harding's

assurances that he would not let Plaintiff be terminated, no corrective action was taken.

13.    Other employees agreed with Plaintiff that Bushre's treatment of him was racially discriminatory and improper.

14.    Plaintiff's white coworkers informed him that Bushre regularly discussed Plaintiff with them, asking them to monitor him and report back on his activities.

15.    Plaintiff was passed over for a promotion in favor of a less qualified white employee, despite Plaintiff being clearly more competent for the position.

16.    Plaintiff made several complaints to management, including to Mike Harding, who convened a meeting between Plaintiff, Bushre, and others.

17.    During this meeting, Bushre became confrontational, punched the table, and stood over Plaintiff in an attempt to intimidate him.

18.    Plaintiff attempted to keep his composure during the meeting, as he feared being fired for reacting to the clear hostility.

19.    Despite this, Plaintiff was eventually promoted, but the situation continued to deteriorate after his trainer, Royon, was transferred, and Bushre continued to scrutinize Plaintiff's work more closely than others.

20.    Not long after being promoted, in January 2023, during a period of slow business and layoffs, Plaintiff attempted to notify Bushre by phone and email that he would be leaving early on January 23. His team leader confirmed that it was acceptable for Plaintiff to leave.

21.    Upon Plaintiff's return to work, Bushre falsely accused Plaintiff of not informing him of his early departure on January 23, despite Plaintiff's attempts to contact him.

22.    On February 2, 2023, while with his children, Plaintiff was informed that he had been terminated for allegedly missing work on January 23 without notifying his supervisor.

23.    Plaintiff had no prior write-ups, had sufficient paid time off (PTO), and had sent notification to his supervisor, but he was nevertheless terminated under false pretenses.

24.    After his termination, several coworkers reached out to Plaintiff, expressing disbelief at the blatant racial discrimination they had witnessed.

25.    Plaintiff filed a complaint with Dow's ethics hotline after his termination, and an investigation revealed that Bushre was already facing criminal charges unrelated to Plaintiff's case, leading to his own termination and the demotion of Mike Harding.

26.    Plaintiff believes his termination was a direct result of his complaints about the racial discrimination he endured, and Dow failed to take corrective action to address the hostile work environment.

27.    Throughout his employment, Plaintiff was subjected to racial harassment, denied equal opportunities for promotions, and ultimately terminated in retaliation for reporting discrimination.

## COUNT I – RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

28.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

29.    42 U.S.C. § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

30.    Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded to him by the U.S. Constitution and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

31.    By the conduct described above, Defendant intentionally deprived Plaintiff of the same

rights as are enjoyed by individuals who are not Black, including the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

32.     The intentional discrimination on the basis of Plaintiff's race by Defendant includes harassment and Defendant's refusal to promote Plaintiff or treat him like other non-Black employees, which ultimately led to Plaintiff's termination.

33.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

34.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

35.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about his future, and emotional distress.

## COUNT II – RETALIATION IN VIOLATION OF THE ELCRA

36.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

37.     At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

38.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

39.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to

retaliate against an employee who has engaged in protected activity.

40.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including speaking up about racial discrimination and harassment.

41.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

42.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including terminating him.

43.     Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

44.     Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

45.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

46.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

## COUNT III – RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT (ELCRA)

47.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

48.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

49.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to

harass or discriminate against an employee on the basis of that employee's race or skin color.

50.     Plaintiff is a Black man and, as a result, is a member of a protected class pursuant to

ELCRA.

51.     Plaintiff was subjected to offensive communication and/or conduct on the basis of his

membership in this protected class, as stated herein.

52.     Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or

done with reckless disregard for Plaintiff's rights.

53.     The unwelcomed conduct and communication was intended to, and in fact did,

substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or

offensive work environment as alleged in the statement of facts.

54.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff

has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental

anguish, emotional distress, humiliation, and embarrassment, and loss of professional reputation.

55.     Plaintiff requests relief as described in the Prayer for Relief below.


## COUNT IV – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ELCRA

56.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

57.     At all material times, Plaintiff was an employee, and Defendant was his employer

covered by, and within the meaning of, the ELCRA.

58.     A respondeat superior relationship existed because agents of Defendant had the ability to

undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of

Plaintiff's daily work activity.

59.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to

create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

60.     Plaintiff's work environment, as alleged in the statement of facts, made it so that any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

61.     Moreover, Plaintiff's attempts to have the situation remedied, coupled with Defendant ignoring Plaintiff's complaints, made the situation untenable.

62.     Additionally, Defendant treated Black employees such as Plaintiff in a hostile, intimidating, and offensive way.

63.     The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

64.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

65.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

## COUNT V – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

66.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

67.     Defendant's termination of Plaintiff violated the public policy of Michigan, which prohibits discharging employees in retaliation for reporting illegal discrimination or for exercising legal rights.

68.     As a direct and proximate result of Defendant's wrongful discharge, Plaintiff has suffered

damages, including lost wages, emotional distress, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trevion Jackson respectfully requests that this Honorable Court enter

judgment in his favor and against Defendant, The Dow Chemical Company, and award the

following relief:

1. Compensatory damages, including lost wages, benefits, and emotional distress;

2. Exemplary and punitive damages;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees;

5. Any other relief this Court deems just and proper.

Dated:  September 18, 2024                    Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
Rejanaé M. Thurman (P85701)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com
*Attorneys for Plaintiff*

9